# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ARKAN HAMANA,<br><br>         Plaintiff,<br>v.<br>SAM KHOLI, et al.,<br><br>         Defendants. | Case No. 10cv1630 BTM (BGS)<br><br>**ORDER RE MOTIONS TO DISMISS AND STRIKE** |

Defendants move to dismiss the third amended complaint ("TAC") [dock. #40]. Plaintiff moves to strike certain allegations in the counter-complaint [dock. #43]. For the reasons that follow, Defendants motion to dismiss is **GRANTED** in part and **DENIED** in part, and Plaintiff's motion to strike is **DENIED**.

## I. MOTION TO DISMISS

Defendants move to dismiss Plaintiff's claims for usury, RICO violations, breach of contract, and intentional infliction of emotional distress.[1] Plaintiff asserts that Defendants are barred from attacking some of these claims because they failed to argue for dismissal in their earlier motion to dismiss. The Court does not find this position to be persuasive. Under Fed. R. Civ. P. 12(h)(2), a defense of failure to state a claim is not waived by the failure to raise

---

[1] Defendants withdrew their motion to dismiss as to Plaintiff's claim for violation of California Business and Professions Code sections 17200 *et seq.* (Reply at 10.)

it in a first motion. *See Wilson-Combs v. Cal. Dep't of Consumer Affairs*, 555 F. Supp. 2d 1110, 1113 n.3 (E.D. Cal. 2008). Under Fed. R. Civ. P. 12(g)(2), a defendant can move to dismiss an amended complaint for failure to state a claim based on arguments not raised in its first motion to dismiss. *See id.*; *In re Harmonic, Inc., Sec. Litig.*, No. C 00-2287 PJH, 2006 U.S. Dist. LEXIS 90450, *39-40 (N.D. Cal. Dec. 11, 2006); *see also* CAL. PRACTICE GUIDE: FED. CIV. P. BEFORE TRIAL, §§ 9:18, 9:20 ("After [Plaintiff] amends, [Defendant] may move to dismiss the same cause of action or *any other cause* of action.") (emphasis in original). The Court addresses each challenged claim in turn.

## A. Usury

Defendants seek dismissal of the usury claim on the ground that Defendants qualify for a statutory exemption from the usury law under Cal. Corp. Code § 25118(b). (Mem. at 8-10.) However, this statutory exemption does not apply to "[a]ny evidence of indebtedness issued or guaranteed . . . by an individual." § 25118(e)(1).

Here, Plaintiff pled that the loans at issue were made to him personally. (TAC ¶¶7-8.) Defendants, in their counterclaim, admit that these loans were made to Plaintiff personally. (Counterclaim ¶¶5-9.) Accordingly, the statutory exemption relied upon by Defendants is inapplicable to the loans alleged in the TAC.

Defendants, in their reply, do not pursue this argument further, and instead, for the first time, argue that the usury claim is not pled with particularity.[2] (Reply 2-4.) The Court does not address this argument. *Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007) ("The district court need not consider arguments raised for the first time in a reply brief.").

---

[2] In the standard of review section of Defendants' opening brief, Defendants assert that "[a] review of the TAC establishes Plaintiff failed to meet [Rule 9(b)'s] heightened fraud standard." (Mem. at 5.) Nowhere in Defendants' opening brief do Defendants argue that Plaintiff "rel[ied] entirely" on a "unified course of fraudulent conduct" as the basis of the usury claim, such that this claim would be subject to the heightened pleading standard pursuant to *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103 (9th Cir. 2003). Defendants' general statements about the heightdened pleading standard are insufficient to put Plaintiff on notice that the particularity of the usury allegations would be an issue in the motion to dismiss.

Defendants' motion to dismiss the usury claim is **DENIED**.

**B. RICO Violations**

Defendants challenge Plaintiff's RICO claim on multiple grounds. Several of Defendants' arguments can be disposed of quickly, as they are premised on an incorrect assumption that Plaintiff's RICO claim is based on a pattern of racketeering.

As an initial matter, Defendants' assertion that Plaintiff cannot plead a RICO claim based on the collection of unlawful debt (Mem. at 12) plainly lacks merit. This position is expressly contradicted by the text of the statute and is wholly unsupported by case law. *See* § 1962(a)-(c); *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1398 n.4 (9th Cir. 1986) ("One of the essential elements a plaintiff must prove in a private RICO action under § 1962(a)-1962(d) is 'a pattern of racketeering activity' or the 'collection of an unlawful debt.'") (emphasis added).

Plaintiff's RICO claim for violation of 18 U.S.C. § 1962(a)-(d) is based on the collection of an unlawful debt. *See* TAC ¶¶98-101. Accordingly, Defendants' arguments regarding Plaintiff's failure to allege predicate acts "to support a claim that there was a 'pattern of racketeering activity'" (Mem. at 14-16) are inapposite. Similarly, Plaintiff need not allege that "predicate acts are related and amount to or pose a threat of continued activity" (Mem. at 16) in order to satisfy the definition of "collection of unlawful debt." *See United States v. Giovanelli*, 945 F.2d 479, 490 (2d Cir. 1991). "Unlike a 'pattern of racketeering activity' which requires proof of two or more predicate acts, to satisfy RICO's 'collection of unlawful debt' definition the government need only demonstrate a single collection." *Id.*; *United States v. Weiner*, 3 F.3d 17, 24 (1st Cir. 1993) (same); *c.f. Religious Technology Center v. Wollersheim*, 971 F.2d 364, 366 (9th Cir. 1992) (discussing the relatedness and continuity requirement as necessary to establish a pattern of racketeering activity).

In contrast, Defendants' arguments that Plaintiff failed to plead the existence of a RICO "enterprise" and failed to plead an effect on interstate commerce are relevant to RICO

claims for collection of unlawful debt. These issues merit closer consideration.

### 1. Existence Of A RICO Enterprise

A RICO enterprise "includes any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). Plaintiff alleges that Defendants are an association in fact. (TAC ¶¶79-81) An associated in fact enterprise is "a group of persons associated together for a common purpose of engaging in a course of conduct." *See Odom v. Microsoft Corp.*, 486 F.3d 541, 552 (9th Cir. 2007) (en banc) (citation and quotation omitted). Further, an associated in fact enterprise must have at least three structural features: "a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose." *Boyle v. U.S.*, 129 S. Ct. 2237, 2244 (2009); *see also Lizalde v. Advanced Planning Servs.*, No. 10cv0834-LAB (RBB), 2011 U.S. Dist. LEXIS 31277, at *22 (S.D. Cal. Mar. 24, 2011) (applying *Boyle* at the pleadings stage of proceedings).[3] The test does not establish a high threshold for pleading an association in fact enterprise, as "the very concept of an association in fact is expansive." *Boyle*, 129 S. Ct. at 2243. Contrary to Defendants' position, because the enterprise element of a RICO claim does not sound in fraud, it need not be pled with particularity. *See In re Park West Galleries, Inc.*, 732 F. Supp. 2d 1181, 1185 (W.D. Wash. 2010).

Plaintiff has sufficiently pled an association in fact enterprise. Plaintiff alleges that Defendants have worked with a common purpose of operating an ongoing loan-sharking operation and identifies the roles individual defendants play in the operation. (TAC ¶¶79-86.) These allegations are sufficient to establish a common purpose and relationships among

---

[3] Defendants fail to address the en banc decision in *Odom* or the Supreme Court decision in *Boyle* in their discussion of this issue. (Mem. at 12-14; Reply at 6-8.) The case law they rely on predates these decisions. Moreover, because Plaintiff alleges the existence of an association in fact, as opposed to a legal entity like a corporation, Defendants' argument that Plaintiff cannot establish a RICO violation by "naming a corporate entity as the Defendant and the combination of that entity and its employees as the enterprise" (Mem. at 14) is inapposite.

those associated with the enterprise.

Plaintiff alleges that he made payments on an unlawful debt from October 2007 to May 2010 and that these payments helped fund the operation of other loan-sharking activities. (TAC ¶¶ 79-86.) Even considering only these dates, this two-year-plus time span is more than sufficient to establish longevity. *See Winger v. Best Buy Co.*, No. CV 10-923-PHX-MHM, 2011 U.S. Dist. LEXIS 29569, at *18-19 (D. Ariz. Mar. 21, 2011); *cf. Odom*, 486 F.3d at 553 (finding "[a]n almost two-year time span is far more than adequate" to establish continuity).

### 2. Effect On Interstate Commerce

To prevail on a RICO claim, Plaintiff "must demonstrate that the enterprise which is involved in or benefits from the racketeering activity is one engaged in, or having an effect on, interstate commerce." *Musick v. Burke*, 913 F.2d 1390, 1398 (9th Cir. 1990). Although this interstate nexus need only be "minimal", *id.*, the TAC fails to meet this standard.

Plaintiff states that the association in fact "has engaged in substantial economic activity that has affected interstate commerce." (TAC ¶ 81.) This conclusory statement is insufficient to establish the interstate nexus. *See Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1954 (2009) ("The Federal Rules do not require courts to credit a complaint's conclusory statements without reference to its factual context.").

Plaintiff's more specific allegations relate to illegal loans made in California, collection of unlawful debt in California, and foreclosure of property in California. Plaintiff does not plead how any of these intrastate acts affect interstate commerce or cite to any case law that states that these acts affect interstate commerce as a matter of law. Because Plaintiff has not established an interstate nexus, Plaintiff's RICO claim is **DISMISSED** without prejudice.

//
//
//

**C. Breach Of Contract**

Plaintiff received $1,000,000 in three separate loans from Defendants. Defendant claims that two written agreements (FAC Ex. A and B) evidence the terms of the first of these three loans (accounting for $400,000). (Mem. at 1-2, 19-20.) According to Plaintiff, these two written agreements "ostensibly memorialized a lawful loan transaction by which Hamana would receive $400,000 from Kholi Enterprises in two installments, make interest-only payments on this money from November, 2007 until November, 2008, pay the entire principal in November, 2008, and pledge the two Trust Deeds and Business Lien as security for the loan agreement." (TAC ¶ 11; *see also id.* at ¶¶ 107, 109.) The first of these two written agreements contained an integration clause providing that "[t]his Agreement can be modified or rescinded only by a writing signed by both of the parties." (FAC Ex. A at ¶12.) The second written agreement, providing for a loan of an additional $100,000, was properly integrated into the first agreement. (FAC Ex. B at ¶ 7.) The terms of the second and third loans (totaling $600,000) were not memorialized in writing. (*Id.* at ¶¶ 20, 23.)

Plaintiff alleges that the written agreement described in the preceding paragraph did not contain "[t]he actual loan arrangement." (*Id.* at ¶12.) Specifically, Plaintiff alleges (a) that the actual annual interest rate on the $400,000 first loan was 16.8% (*id.*); (b) that the parties agreed plaintiff would pay an additional sum of $50,000 up front to secure the loan (*id.* at ¶¶ 12-13); (c) that Plaintiff would pay all or most of his interest payments in cash (*id.* at ¶ 12); and (d) that the loan would remain open indefinitely and Defendants would not foreclose on the loan collateral so long as Plaintiff timely paid the actual interest on the loan (*id.*). Plaintiff further alleges that he timely made interest payments from November 15, 2008 until May 2010. (*Id.* at ¶109.) Plaintiff alleges that Defendants breached their usurious oral agreement by calling all three loans on May 17, 2010, over a year after the written deadline for re-payment on the loan principal, and initiating foreclosure proceedings. (TAC ¶110.)

Defendants contend that Plaintiff's breach of contract claim on the first loan is barred by the parol evidence rule, since the integrated written loan agreements provided Defendants

the right to foreclose on the loan collateral if the loan principal was not paid in full by November 2008. (Mem. at 19-20.) However, Defendants (and Plaintiff) overlook the rule that "extrinsic evidence is admissible to show that an ostensibly legal transaction is actually usurious[.]" *Patwardhan v. Kale*, No. E031792, 2003 WL 21130236 at *8 (Cal. App. 4th Dist. May 16, 2003); *see also Martyn v. Leslie*, 290 P.2d 58, 68 (Cal. App. 1955) ("[T]he parol evidence rule is not applicable in cases involving the claim of usury and . . . parol evidence is, in such cases, admissible to show the actual nature of the transaction, and in no way depends upon the existence of an ambiguity in a written contract.").[4]

Essentially, Plaintiff has alleged that the two written agreements are a disguise for an illegal, usurious transaction. "It then must follow that every circumstance surrounding or connected with the transaction is material, if in any manner it will reveal the intention of the parties." *Miley Petroleum Corp. v. Amerada Petroleum Corp.*, 63 P.2d 1210, 1214 (Cal. App. 4th Dist. 1936) (elaborating on usury exception to parol evidence rule). Here, Plaintiff alleges that Defendants' oral promise not to initiate foreclosure proceedings for failure to timely repay the loan principal was a term of the actual usurious agreement. (TAC ¶ 12.) Extrinsic evidence surrounding this and other terms of the alleged oral agreement is clearly admissible to establish the parties' true intentions with respect to the loan agreement.

Therefore, Defendants' motion to dismiss Plaintiff's claim for breach of contract, as it applies to the first loan agreement and modification totaling $400,000, is **DENIED**. The Court also notes that Defendants' motion to dismiss based on the parol evidence rule is inapplicable to the second and third loans totaling $600,000, as these loans were not made pursuant to a written instrument.

---

[4]This exception to the parol evidence rule is widespread and longstanding in American jurisprudence. *See, e.g., Wilson Industries, Inc. v. Newton County Bank*, 245 So.2d 27, 31 (Miss. 1971) ("In cases involving usury, parol evidence is admissible to show that writings are not what they seem and to establish the true facts with respect to the transaction. In such cases it may be shown by parol that a document, legal in form, was in fact a device to disguise usurious interest or does not reflect the real agreement, and that sums mentioned are in truth, usurious interest."); *St. Maries v. Polleys*, 1 N.W. 389, 391 (Wis. 1879) ("[W]e suppose it too plain for argument that [a party] might prove by parol the usurious agreement, if one was made. Parties do not generally reduce their usurious contracts to writing, and unless the real agreement could be shown by parol, the statute would practically be evaded in all cases.").

**D. Intentional Infliction Of Emotional Distress**

To state a claim for intentional infliction of emotional distress, a plaintiff must allege: "(1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct." *Prevost v. First Western Bank*, 193 Cal. App. 3d 1492, 1503 (4th Dist. 1987) (citation and quotation omitted). "Behavior may be considered outrageous if a defendant (1) abuses a relation or position which gives him power to damage the plaintiff's interest; (2) knows the plaintiff is susceptible to injuries through mental distress; or (3) acts intentionally or unreasonably with the recognition that the acts are likely to result in illness through mental distress." *Cole v. Fair Oaks Fire Protection Dist.*, 43 Cal. 3d 148, 155 n.7 (1987).

Plaintiff bases this claim on two allegations. First, Plaintiff alleges that Defendant Kholi "threatened Hamana, exclaiming and shrieking in an intimidating, menacing manner that Kholi or Kholi's henchmen would grievously injure or murder Hamana, his wife, and their children." (TAC ¶135.) Second, Plaintiff states that Mr. Kholi "maliciously and oppressively proceeded to foreclose under the Trust Deeds." *Id.*

These allegations are sufficient to state a claim for intentional infliction of emotional distress. First, contrary to Defendants' assertion, the first allegation cannot be characterized as a "mere insult[], indignit[y], or other trivialit[y]." Mem. at 23 (quoting *Cole*, 43 Cal. 3d at 155 n.7.) The Court concludes that a threat to murder Plaintiff and his family is an action that is "likely to result in illness through mental distress." *Cole*, 43 Cal. 3d at 155 n.7. Plaintiff has stated a claim based on this allegation.

Second, Plaintiff has alleged that the loans were structured in a way to provide Defendants with the sole discretion to initiate foreclosure proceedings at a time of their choosing. (TAC ¶119.) This provided Defendants with the power to damage Plaintiff's interests, a power that was abused by "abruptly declaring default on all three loans." (TAC

¶124.) A claim for intentional infliction of emotional distress may rest on this allegation as well.

Defendants correctly observe that if the initiation of foreclosure proceedings was lawful, this claim cannot be based solely on the foreclosure. This is because "[w]hether treated as an element of the prima facie case or as a matter of defense, it must also appear that the defendants' conduct was unprivileged." *Prevost*, 193 Cal. App. 3d at 1503 (citation and quotation omitted). However, because Plaintiff's intentional misrepresentation claim does not rely exclusively on the foreclosure, the issue of whether foreclosure proceedings were unprivileged need not be determined at the present time. Defendants' motion to dismiss the intentional infliction of emotional distress claim is **DENIED**.

//
//

**E. Motion To File Sur-Reply**

Plaintiff's motion to file a sur-reply is **DENIED**. The majority of Plaintiff's proposed sur-reply discusses legal arguments that were first raised in Plaintiff's opposition brief. Plaintiff's desire to further argue these points does not present good cause for filing a sur-reply.

Plaintiff correctly identifies Defendants' argument that the usury claim failed to meet the heightened pleading standard as being improperly raised. Because the Court does not address this argument, a sur-reply is unnecessary.

## II. MOTION TO STRIKE

Motions to strike are generally viewed with disfavor. *See Esoimeme v. Wells Fargo Bank*, 2011 U.S. Dist. LEXIS 98492, at *54 (E.D. Cal. Sept. 1, 2011) (citing 5A C. Wright & A. Miller, Federal Practice and Procedure: Civil 2d 1380). Such motions will usually be denied unless the allegations in the pleading have no possible relation to the controversy, and may cause prejudice to one of the parties. *Id.*

Plaintiff seeks to strike all of the allegations in the counter-complaint that concern or describe the first loan and loan modification on the ground that these allegations are "immaterial" and "irrelevant." This argument lacks merit.

First, Plaintiff's position that the loan is "immaterial" when referenced in Defendants' counterclaim cannot be supported when Plaintiff's TAC discusses the first loan and loan modification at length. Second, Defendants allege a breach of contract for Plaintiff's failure to perform its obligations under the terms of the first loan agreement and modification. At a minimum, allegations that relate to this loan agreement and modification are clearly relevant to this claim. Plaintiff's motion to strike is **DENIED**.

//
//

### III. CONCLUSION

Defendants motion to dismiss [Dock. #40] is **GRANTED** in part and **DENIED** in part. Plaintiff's RICO claim is **DISMISSED** without prejudice. If Plaintiff seeks to cure the deficiencies in this claim, Plaintiff must file an amended complaint within twenty days of entry of this order. All other claims remain operative.

Plaintiff's motion to file a sur-reply [Dock. #50] is **DENIED**.

Plaintiff's motion to strike [Dock. #43] is **DENIED**.

**IT IS SO ORDERED.**

Dated: October 24, 2011

**HONORABLE BARRY TED MOSKOWITZ**
United States District Judge